June 30, Mr. Tewi. Good morning, Your Honor. Ken Tewi for Mr. MAHER, Jerome MAHER, and Jennifer Bay. Jennifer Bay is in the first row, that very good-looking woman who happens to be my spouse. In any event, Your Honor, in preparing this argument, one of the lawyers that gave me a good piece of advice, and probably our most prominent lawyer in the state of Illinois, you'll probably recognize and say, put him in case you don't, he was from downstate Illinois, not too far from where I was born. Isn't this case about race, gender, and color rather than individual personalities? Well, Judge, my answer is contrary to what Mr. Lincoln said, and that is, my answer is yes and no. Certainly, the question of color is an issue. However, weren't all the arguments that were raised and decided could have been by the 7th Circuit? No. I say that categorically no, because in the year 2002, the defendant receiver conveyed all his assets and conveyed my belongings to the FDIC, terminating, effective January 1st, 2002, its receivership. Now, there is no way in prior litigation... This was the Horizon Group. That's correct, Your Honor. Actually, when you say Horizon Group, Horizon was taken over around January 11th, 1990, and immediately thereafter, they conveyed all their interests. That is, the appointed receiver conveyed all his interests to them, they created a new bank, and conveyed all liabilities and assets to the new bank. And your contention is that the FDIC, as receiver, improperly failed to make payouts to your clients when they should have done that, correct? That's correct, Your Honor. However, the problem is that that same claim seems to have been litigated in the District Court and brought up in the 7th Circuit and rejected. And that's the basis for the race-to-custom. So why is this intended race-to-custom? Well, Your Honor, I'm not sure which occasion you're talking about. I'm talking about the second 7th Circuit decision. Oh, the second 7th. Because the first 7th Circuit decision said, I don't mean to dissent. The second one said, in accordance with, I think, what was Your Honor's position, slattery. You can't collect. There's no money left. It's moving. Slattery is exactly to the contrary. And we submitted that there was a case... Yes, yes. Well, there's nothing we can do about that. No, except, Your Honor, you can file slattery. Well, I don't understand how filing slattery helps. In slattery, we recognize that these claims might be brought against the United States as well as against the FDIC. But under the B Statement, where the United States' liability depends on the FDIC's liability, it's the same claim as was brought against the 7th Circuit, even though the nominal dependent of the United States in the Carter Act case is different from the FDIC. It's still the same claim. But the restatement, Your Honor, also says this. The restatement does not apply if there has not been a full, fair hearing. That's in accordance with the United States Supreme Court's standard. What was not fair about the hearing in the 7th Circuit? It was not on the merits. We have had no opportunity to sit back and prove our claim in spite of the fact that ERISA and FIREMA both say you've got to give notice when you're denying a claim. Now, the argument has been made. Well, you know, surely if I would claim that you didn't pursue it. But ERISA says this. I'm sorry, FIREMA says this. If your litigation has been pending before a receiver for the institution was appointed, then you could continue your litigation. That's exactly what we did. And that's written into the law. And also it's clear from the congressional reports that was their intent. If the 7th Circuit had said, given the same reasoning, said we reject the claim on the merits, would you agree to the First Judicata? If the 7th Circuit had said that you were excused from exhausting your remedies because you followed the law passed by Congress, namely the FIREMA, that says if the litigation was in progress before the receiver was appointed, and the receiver here was appointed. But what I'm trying to get at is there is a question of terminology because the 7th Circuit refers to this as justiciability rather than using the term merits. Somehow that makes a difference because they use the wrong terminology. It's not restriction. Is that what the theory is? I don't think so, Judge. I think it's not a question of terms. It's a question of what's the substance of their ruling. And the substance of their ruling, number one, was yes, we do have jurisdiction under ERISA. Whether or not they might get jurisdiction under anything else. That's number one. Number two is having jurisdiction under ERISA. Suddenly they fall into the position that not only was there a fiduciary relationship that FIREMA commands in Section 18 of Title 12, commands it, but also if you are taking over a pension. As the Assumption Agreement clearly said in January of 1990 that the conservator who was appointed then is obligated to pay all pension funds. We set it forth in the very words. So when that case went up to the U.S. Court of Appeals the first time in the Seventh Circuit, the Seventh Circuit said, of course, we are not saying that any contract rights which are vested are disturbed or prevented by this ruling. They just held it clearly that that was not the case. The vested rights were out the window. That, of course, is consistent with ERISA. And if they wanted to sit back and deny the rights, they must give notice. We were never given notice of the termination of the receivership. However, in the Seventh Circuit, with the very tension I was inquiring about, the attorney for the FDIC said, oh, well, we did publish in the Federal Register that we were going to terminate the receivership. Now, the Supreme Court in several cases, one is Tulsa, a case which we have cited, another is the Mennonite case, which we have cited, and there are several others that we haven't bothered to cite, which say this, when property rights, or the life of a person, of course, is at stake, you must, in Justice O'Connor's words, you must give notice that it's calculated to inform. Now, I don't know if anybody here in this room today consistently reads the Federal Register. I certainly don't think the average layperson does. I think the average lawyer doesn't do that. However, in Tulsa, what happened in Tulsa was there was a publication made in the local newspaper saying everybody who might have a claim against the decision to stay silent. Actually, there's a chart there. You'll look at it in 60 days in the state of Oklahoma. And the Supreme Court said, this creditor derives its rights from being the S&E of the doctors. It was a collection agency. The doctors would perform the last medical services. You've got to give notice reasonably calculated to inform, in Justice O'Connor's words. Was the notice adequate? Published it in the Federal Register, saying you can comment. Didn't even say come in. You can comment. Is this the first time that you've raised that point in court? No, Your Honor. On the oral argument in the Seventh Circuit, the negation, Judge Dike is referring to, that for the first time, the FDIC attorney in oral argument informed us that it was published in the Federal Register. There's absolutely no knowledge before you. But you were condemning the briefs. You were complaining about the lack of notice in the Seventh Circuit proceeding, right? I guess we were catching something. That's the problem. Well, Your Honor. They were right or wrong, whatever. They made a decision. And you can't guess, like, why it would be happening. That's the problem. Well, yes, they made a decision. Notice or not notice, there's no money. It's over. Now, it seems to me, this court has the obligation to decide do we follow the Seventh Circuit? Do we follow Slattery? And on the following Slattery side, do we follow the obligations that Congress has put on the receiver under FIREA, put on the receiver who's now acting as the administrator of any pension banks? Mr. Stewart, do you want to say if you have some time for rebuttal? You will want to make a rebuttal so that you can either continue or say it. I'll say it, Your Honor. Mr. Phillips. May it please the Court. I'd like to discuss two points this morning. One is the doctrine of res judicata and the second point would be the statute of limitations. Going back to the first point, res judicata, this case is about whether or not Mr. Tomaha and Gourvet are entitled to relitigate an issue that they have previously litigated and lost. And most recently the Seventh Circuit and two other litigations before that. The answer to that question must be no as the doctrine of res judicata bars the relitigation of issues that have already been decided. This current action is the fourth time that Mr. Tomaha and Gourvet have attempted to collect on their employment contracts with Verizon Savings Bank. Do you have a peak question of whether the Second and Seventh Circuits decision is res judicata on this issue? What the Seventh Circuit addressed was whether or not Mr. Tomaha and Gourvet could bring their claim for employment benefits against Verizon Bank yet again. Their claim was against the bank and once the bank was placed in receivership therefore against FDIC's receiver. But FDIC's receiver merely steps into the shoes of the insolvent institution. The court of the Seventh Circuit addressed that issue and determined that any claim would be moved as the FDIC receiver had completely resolved Verizon Savings Bank through the insolvency. So there was nothing left to pay any judgment fine. Additionally, the court looked, the Seventh Circuit looked at this issue and said that any other claim that Mr. Tomaha or Gourvet could have raised was either raised in the Seventh Circuit before or could have been raised. Most importantly, Mr. Tomaha and Gourvet in this current action assert the same claim for these employment benefits, this time it's under a legal theory of a breach of fiduciary duty. The issue hasn't changed, it's just a new legal theory which is the current theme in all of the litigations Mr. Tomaha and Gourvet have had in this case. This theory of breach of fiduciary duty skips the first step which the court of federal claims addressed that Mr. Tomaha and Gourvet never actually established themselves as creditors of Verizon Savings Bank. That issue was first decided in the Harris Trust litigation. I mean, you're arguing that across the same claim in the Seventh Circuit proceeding that they lost the litigation. Why are you trying to argue that you're underlining the merit? It's not before us that they were creditors and not creditors. That would have to be decided if the court of federal claims addressed the merit. That is true, Your Honor. I was merely raising that to explain the basis for it. Harvard Justice agreed that this issue is far from being an issue that requires restitution of copies because it had already been determined by the Seventh Circuit that the claim couldn't go forward as a moot. And regardless, all of that issue had either been decided previously or could have been raised previously. Mr. Shultz, this case strikes me as a classic example of no good deed goes unpunished. If I read the record correctly, Mr. Mayer and Mr. Grawley had valuable pension rights with the original savings and loan. Had they stayed with that original savings and loan, they probably would be happily retired on their pension for a long time. But they responded to a government request that their savings and loan fail out using the government by merging with several troubled savings and loan. That's correct so far. Subsequently, as part of that merger, they agreed to transfer their pension rights to the new merge group, the Rust Organization. That was almost 30 years ago. And they've been trying to get their pension rights ever since. And every time they turn, the government blocks them on one theory or another. Do I misunderstand the fundamental case, which is they had pension rights, they did the government a favor by merging to save a couple of, or three, I think, that were failing themselves, and now the government, for 30 years, has said, no, no, you can't have your pension rights. I think there's one point in there, Your Honor, that we think is correct. In 1982, when these supervisory mergers occurred, and the bank and the FDIC discussed this, FDIC stated that because these pensions were on the books, the supervisory mergers couldn't go forward. The only way the mergers would go forward is if these pensions were somehow adjusted. Horizon Savings Bank chose to adjust the pensions. They were willing to help the government out and to eventually transfer their pension rights to a new organization in order to make the merger possible. Is that what you're saying? That's one way to look at it, Your Honor. I think there are more important ways to look at it. We're missing the fact that Horizon Savings Bank gained valuable consideration in these deals. By entering into these supervisory mergers, Horizon Savings Bank was able to do it. But Horizon then goes under because Congress takes away supervisory goodwill, which you may remember in Winstar we found to be constitutionally unacceptable. And so don't tell me about how Horizon benefited because they went belly up because of what the government later did. So Horizon didn't benefit. These fellows ended up with no pensions. Well, what's going on? Please explain to me what is it that the government thinks should be done with this case? The government believes this case should be dismissed on res judicata grounds, Your Honor. At bottom, this is not a Winstar-related case. While those issues may have arisen with Horizon Savings Bank, the issue before this Court, the issue that Mr. Zmar and Raleigh have raised is whether or not their entitlement to collect on contracts they had with Horizon Savings Bank, which was deemed insolvent and entered stewardship. I understand the technicality of the government's position, which you've now been arguing for five litigations. And every time they try another move, people all counter them. And it has been a very successful activity because they make the wrong moves or for whatever reason. At some point, do they ever get their pensions? They do not get their pensions, Your Honor, because they failed to follow the procedure and establish themselves as creditors of Horizon Savings Bank in the beginning, which is the size of a seven-story building. But they lost. It's res judicata. You know how it's done. Stop assessing the merits. The merits are not before us, right? The merits are not before you, Your Honor. You can't decide this case based on the merits. No, this Court cannot, Your Honor. This Court has to decide this issue based on whether or not res judicata applies. The government's position is because these issues were either decided or could have been raised in the previous litigation that res judicata bars Mr. Maharmgrabi from advancing their claim in this case. Regarding our second point, Your Honor, the statute of limitations, should the Court find that res judicata does not apply in this case, the statute of limitations should also bar Mr. Maharmgrabi's claim for the Court of Federal Claims. They brought their claim in 2008. In their complaint, they stated that the actions of which they were seeking redress occurred 15 years prior, at the very least, in 1993. The 28 U.S.C. 2501 establishes a six-year limitations period to bring a claim in the Court of Federal Claims. Because Mr. Maharmgrabi weren't timely in asserting this claim, the Court can affirm the Court of Federal Claims dismissal on that alternate grounds. And for these reasons, Your Honor, we ask that the Court affirm the Court of Federal Claims dismissal barring Mr. Maharmgrabi's claim on the basis of res judicata. Thank you, Mr. Phillips. Mr. Timothy Erickson, Revolver Law. Yes, thank you, Your Honor. Your Honor, the assertion was just made that we didn't timely file our claims. When we got the notice back in spring of 1990 to file your claims, what did we do? We didn't timely file the claim. That was the notice in effect. Then, after our litigation was filed in the state court, they said it was filed in the federal court, it was filed in the state court and then removed to the federal court by the constituent. And we had also named the reconstruction trust as not just the constituent, but as the receiver. They came in and said, no, no, we as a receiver have disposed of all our assets to a new bank. We have no part in this. We have to dismiss it early on in the litigation. Litigation continues and then a receiver is appointed in March of the following year. At that point, we've got a receiver appointed and we've got litigation going and the receiver gives us notice to file your claim, we file the claim together. Never has it been asserted you didn't file the claim. Never. As a matter of fact, contrary to the express provisions of ERISA, never ruled on the claim. Now when they ruled, they wanted to file a court of federal claims. In the court of federal claims, we actually didn't initially file there. A district court judge transferred a case that they brought against our people with counterclaims and the counterclaims transferred to the court of federal claims. We didn't seek out the court of federal claims in the sense of filing our claim it was transferred. The contract was granted in the United States along with the court of federal claims. Your Honor, that's what Judge Burns in the initial case called the Harris case told me about. That's what... At this point, you did not then file the court of federal claims? No, Judge. We had an ongoing case with the judge who had set a trial date and actually, this was at the end of the trial that Judge Burns made that comment. It wasn't in the holding but he made that comment. Then, of course, that case went up in appeal and again, the second verdict says we don't need to say that you don't have a remedy for a violation of your vested contract rights. What are we to think of? So, at that point, the case which transferred the counterclaim to the court of federal claims was pending. In any event, Your Honor... Under ERISA, you had to file within a certain time frame your claim in your administrative case. Judge, under ERISA, we filed timely by filing our claims with the receiver. But that is not what the statute provides. Well, Your Honor, the statute provides that the big burden is on the FDIC and its predecessor because they owe fiduciary duties to us. And there's nothing in the record that shows how they observed those fiduciary duties either under ERISA or under the pension statute. Now, I would also say that we pointed out to the U.S. Court of Appeals in the case Your Honor was talking about, we pointed out how the Ninth Circuit had said, wait a minute, receiver, FDIC, you've got to pay. You can't discriminate against the First Empire. Pardon me? First Empire. First Empire, yes. Maybe it's out in the circuit as well. Maybe they weren't. Maybe it would have come out differently in the Ninth Circuit. Trouble is, they made a decision. That's your problem. Well, Judge, I would grant you if we could have gone to the Ninth Circuit, it would have come out differently. And we didn't shop slavery. Slavery was decided by this court and this court is, one, as we said just a few minutes ago, contrary claims belong in the U.S. Court of Federal Claims. That's where we are now. It's time for this slide. So we thank you very much for taking the case under review. Thank you, Judge.